## Pontzer v. Borough of St. Marys

*Charles I. Houston,* for plaintiff.
*Thomas G. Gregory,* for defendant.

HIPPLE, P. J., July 29, 1949.—This proceeding instituted by plaintiff through a petition for a declaratory judgment to which an answer was filed by defendant involves the interpretation of certain portions of two zoning ordinances adopted by the Borough of St. Marys, one approved October 4, 1937, and an amendment thereto approved March 17, 1947. Plaintiff is a resident of St. Marys Borough and in March 1945 purchased a lot of ground fronting 90 feet on the West side of South St. Marys Street, with a depth of 200 feet, upon which is erected a one-story tile garage building 50 feet by 70 feet on the western portion of

the lot, fronting approximately 70 feet from the building line of the street.

By the two zoning ordinances in question, the premises involved are located in a residential area of the borough comprising part of the "A Residence District". On November 17, 1947, plaintiff applied to the borough council for a building permit to construct an addition to the present garage building at an estimated cost of $18,000 and submitted plans and specifications thereof with the application for the building permit. The borough council refused the application for the reason that the construction would be "contrary to the Borough Zoning Ordinances".

Under section 200 of the original Zoning Ordinance of October 4, 1937, in the "A Residence District", land may be used and buildings may be erected, altered or used for any purposes except certain prohibited uses among which are "6. Automobile Service stations for supplying gasoline, oil or petroleum products to retail trade, *other than as now existing*", and "7. Public Automobile garages". By the amending Ordinance of March 17, 1947, various regulations were adopted with relation to the erection, alteration or use of a building, and a lot or premises, none of which permits the use of a lot or a building as an automobile service station, or a public automobile garage. This section however provides that:

"Any building or premises now used for a purpose contrary to the above regulations may continue to be so used but *said use* may be in no wise *extended or enlarged* nor may the exterior appearance of any such building or premises be changed so as to divest it of its residential dwelling appearance and character."

Although the original Ordinance of 1937 provided for the appointment of a board of adjustment to hear appeals for special exceptions and for variances from

the terms of the ordinance, etc., no board of adjustment was ever appointed.

The questions involved are stated by plaintiff's counsel to be:

(1) Does the Zoning Ordinance of 1937, as amended March 17, 1947, prohibit the enlargement of, or the substitution of a new building for, an existing commercial garage building, with a resultant change of exterior appearance?

(2) Is the use of a commercial garage so extended or enlarged by the mere enlargement of an existing garage building or by the addition of a new building to an existing building so as to bring such use within the prohibition of the Ordinance?

(3) Is section 200 of the Zoning Ordinance of 1937 as amended March 17, 1947, unconstitutional insofar as it attempts to prohibit the increase or enlargement of an existing commercial use, and the change of exterior appearance of any existing commercial building?

Plaintiff is an authorized dealer in Chrysler and Plymouth automobiles, in Mack and International Trucks, and has held the franchise for the sale of Chrysler automobiles since 1924. Prior to his purchase in March 1945 he occupied the premises as a tenant for about four years under the former owners.

In both the original Zoning Ordinances of 1937 and the amended Ordinance of 1947, the "A Residence District", including the eastern and western side of South St. Marys Street, extends from the southern boundary of an intersecting street known as State Street for an approximate distance of 2,500 feet to the Southern boundary line of St. Marys Borough. South St. Marys Street is 100 feet in width, is an improved State highway, known as State Highway Route 255, and is the main artery of traffic out of,

through and into St. Marys Borough to and from points South, Southeast and Southwest, including Clearfield, State College, Harrisburg, Philadelphia, Baltimore, Washington, DuBois, Pittsburgh, etc., and intermediate points. All of the buildings on the west side of South St. Marys Street are residence properties, either of brick or frame construction, the exceptions being the public high school of St. Marys Borough, a barn in the rear of the high school used for the storage of ice, and a small frame bakery shop and grocery store operated by Ernest Meisel, which has been in its present location for upwards of 45 or 50 years. On the eastern side of South St. Marys Street between State Street and the southern borough line all of the improved properties are residence properties, with the exception of a building formerly used as a bakery, so that the entire area of South St. Marys Street from State Street to the southern borough line is residential in character.

There was a residence property upon the lot in front of the present garage which was removed some time before plaintiff entered into possession and which is now located on an adjoining 50 foot lot opposite the garage building and about 50 feet from the sidewalk line on the west side of South St. Marys Street.

Plaintiff testified that the present building is used for public garage purposes, by which he stated he meant that he sold automobiles, repaired and stored them, sold gasoline and oil, greased cars and did anything pertaining to the automobile business, that there were some gasoline pumps 70 feet easterly from the garage building located between the sidewalk and the pavement of South St. Marys Street which were in place when he took possession of the premises in 1941 as a tenant. The garage building contains several grease racks, cleaning equipment, wash racks and

machinery used in the business but the building does not have sufficient room to store automobiles. Plaintiff plans to construct, on the eastern side of the present building, a fireproof addition, with a one-story basement, of concrete blocks and steel, brick and plate glass, making the entire structure one building. This addition would extend 40 feet in an easterly direction towards South St. Marys Street and 70 feet in a northerly and southerly direction. The basement of the proposed addition would be used for automobile repairs and service, and the main floor as an automobile showroom and for office purposes. The distance between the front of the new structure and the street line would be about 30 feet. The land not now occupied by the present garage building is used for the storage of cars, particularly those left for repairs.

Regarding the storage of cars for the general public, plaintiff testified that during the year from May 1947 to May 1948 some persons might have stored a car there two or three times, but he did not cater to that type of business, because he did not have the facilities to provide for such storage, although storage is a part of the garage business which is not refused. However, he did not make a business of storing cars for the public or selling space for car storage, and he stated specifically that if the new building was constructed, he would not cater to the storage of cars for the general public.

The purchase price of the premises was $5,500 and the present value, without the contemplated improvements, is about $10,000. If the new buliding is constructed, plaintiff's business will be increased, in his opinion, by the sale of additional automobiles and more gasoline and oil.

The portion of plaintiff's lot upon which the present building is erected is much lower than the level or

grade of South St. Marys Street, the difference amounting to 9 feet, 10 inches, in an approximate distance of 90 feet. The basement of the new building would be on the same level as the present building, the storeroom would be on the same level as South St. Marys Street, and access to the new building would consist of two doors, one to the first story on the level of the street, and the other to the basement on a driveway approximately 20 feet long and down grade.

Plaintiff testified that the value of his franchise for the sale of new automobiles was $25,000, representing the gross sales of new cars. He offered some testimony from an automobile mechanic employed by Ernest Meisel from 1931 to 1934, inclusive, at the present location, to the effect that during this period the business conducted was that of repairing automobiles, selling cars and a general garage business, but that Mr. Meisel did not make a practice of storing cars for the public generally, or hold himself out as the operator of a public garage for storage purposes, although occasionally a car might be stored for one night and that the use of the lot in front of the garage building was for parking old or wrecked cars.

It was shown that the value of plaintiff's property for residential purposes only was from $3,000 to $3,300, and if used only as a filling station, without the proposed improvements, the value would be the same because it was not conveniently situated as a station for the sale of gasoline and oils.

Another witness, who was in the business of marketing petroleum products and sold gasoline and oils to plaintiff, valued the premises at $3,500. He stated plaintiff's sales of gasoline had decreased, there being a difference of about one half the amount sold by this witness to plaintiff during the period from 1941 to 1948; that in 1942 there were 29,370 gallons of gaso-

line sold to plaintiff as compared with 15,760 gallons in 1947, but he admitted that the gasoline rationing period would account for the decrease in sales. The sale of gasoline and oil constitutes a minor part of plaintiff's business.

Defendant offered some testimony to the effect that on this particular street, because it is a State highway and a main artery of motor vehicle traffic, most of the properties are more valuable as business instead of dwelling properties, provided the present residences were destroyed or developed for business purposes, and therefore the properties thereon were more valuable without the restrictions contained in the zoning ordinances than with the restrictions maintaining the residential character of the neighborhood. Consequently, defendant contends that any reduction in the value caused by the restrictions contained in the zoning ordinances is shared by plaintiff equally with the owners of other land in that locality.

From plaintiff's viewpoint, the necessity for the construction of this model garage building lies in the fact that if he is denied his permit so to do, he will not be able to retain his franchise or remain a dealer with the Chrysler and Plymouth organizations, nor with any other automobile manufacturers, because their present requirements are such as to make it necessary to have a sufficiently large show room and equipment for the display of automobiles to the public.

The questions involved in this proceeding are ruled by the cases of Haller Baking Company's Appeal, 295 Pa. 257; Gilfillan's Permit, 291 Pa. 358, and Cheswick Borough v. Bechman et al., 352 Pa. 79.

The Ordinances of 1937 and 1947 were enacted under the authority vested in the borough by the Act of July 29, 1923, P. L. 957, 53 PS §15731, and there is no question as to their constitutionality. Such ordi-

nances have been upheld as a proper exercise of the police power, provided they do not interfere with the use or control of private property without relation to the public safety, health, morals or general welfare, and also do not extend to an arbitrary, unreasonable or unnecessary intermeddling with the ownership of private property: Gilfillan's Permit, supra.

The lot of plaintiff and the buildings thereon erected were used at least since 1931 and prior to the adoption of the Ordinance of 1937 for the purpose of conducting a business to repair automobiles, sell cars and a general garage business, and when plaintiff took possession of the premises in 1941 as a tenant the premises were then used for such purposes and the gasoline pumps were in place at that time. There has been no use of these premises since 1931 for any purpose other than as a garage for the repair of automobiles, the sale of automobiles and similar lines of business and the evidence is not sufficient to find that the buildings were ever used as a public garage, that is a garage for the storing of automobiles for the public generally. Therefore, when the Ordinances of 1937 and 1947 were adopted, the use to which these premises were put was a nonconforming use which could not be interfered with by the borough.

Defendant contends that by the construction of the addition to the present building proposed by plaintiff there will be an extension or enlargement of the nonconforming use which is prohibited by section 200, par. 5 of the Ordinance of 1947. However, as held in Gilfillan's Permit, supra:

"Petitioner's business had been established at its present location long before the passing of the zoning Ordinance and was actively conducted at the time the Ordinance went into effect; accordingly, as the property was then used for lawful purposes, the City

was without power to compel a change in the nature of the use, or prevent the owner from making such necessary additions to the existing structure as were needed to provide for its natural expansion and the accommodation of increased trade, so long as such additions would not be detrimental to the public welfare, safety and health."

In the Appeal of Haller Baking Co., supra, the Supreme Court defines the term "existing use" to mean the utilization of the premises so that they may be known in the neighborhood as being employed for a given purpose, i.e., the conduct of a business.

The Cheswick Borough case, supra, was a bill in equity to restrain one Bognar from conducting a sand-loam business upon the premises in question which was alleged to be contrary to the provisions of the borough zoning ordinance.

An examination of the proceedings in the lower court in this case as reported in 93 Pitts. L. J. 283 and 321, shows that the chancellor originally directed the issuance of an injunction because the manner in which the operations were being conducted were in her opinion far in excess of the nonconforming use of the previous operator at the time the zoning ordinance was adopted and therefore was not to be construed as a continuance of the previous operation but as a new and more extensive operation. Exceptions having been filed and the matter coming on before the court en banc on which the original chancellor sat, various exceptions were sustained and the bill was dismissed. The court en banc in discussing the opinion of the chancellor stated that it agreed with the chancellor that the Bognar operation was infinitely more extensive but admitting this to be the fact and granting that the new operation was of a more devastating character, the conclusion was reached that it was not

a new use but was rather the continuance of a non-conforming use in existence at the time the ordinance was adopted. It appeared that previous to the operations by Bognar the property was used for the taking of sand by a man named Sidwell, which operation was in existence when the ordinance was adopted. There was a manifest difference between the manner in which the operations were conducted upon these premises by Sidwell and later by Bognar. The Sidwell operation was limited to the taking of sand to a depth of about six feet, whereas the Bognar operation was extended through the entire tract, a movable rotary screen was erected upon the premises set on concrete pillars and the land was excavated to a depth of 20 feet or more, leaving large deep holes which filled with water. There were also piles of sand of varying depths located close to an avenue which was a boundary of the premises. This operation left the premises in an unsightly and dangerous condition.

It is true that the zoning ordinance in that case imposed no restraint upon broadening the scope of the nonconforming or existing use at the time the ordinance was adopted. However, the Supreme Court in affirming, held:

"It is not essential that the use, as exercised at the time the Ordinance was enacted, should have utilized the entire tract. To so hold would deprive Appellees of the use of their property as effectively as if the Ordinance had been completely prohibitive of all use. This result could not have been intended . . . that modern and more effective instrumentalities are used in the business will not bring it within the prohibition of the Ordinance if in fact there was an existing use, provided these are ordinarily and reasonably adapted to the carrying on of the existing business. . . . Nor is it material that at some future time the use for

which the property was intended was that of building homes. It is not the present intention to put property to a future use but the present use of the property which must be the criterion."

The last sentence of section 200, par. 5 of the Ordinance of 1947, reading "Nor may the exterior appearance of any such building or premises be changed so as to divest it of its residential dwelling appearance and character" does not apply in this proceeding. The building upon the premises in question never was a residence and consequently there can be no change in the appearance or character of the building because it was never used as a residence or for residential purposes.

In cases such as this it must affirmatively appear that the constitutional right to the use of property has not been infringed by the zoning regulations: Imperial Asphalt Corp. Zoning Case, 359 Pa. 402-406. This case involved the remodeling of a grist mill and the change of the use of the mill from a grist mill to a mill for processing asphaltic concrete, a preparation used in the repair and construction of highways. The grist mill had been operated for a considerable period prior to the adoption of the zoning ordinance in question and continued as such until it was purchased for the purpose of preparing the asphaltic concrete. The Supreme Court ordered a permit to be issued permitting the use of the mill for the latter purpose in which Justice Horace Stern concurred on the sole ground that the contemplated use of the mill was merely a continuation of the previous nonconforming use.

A zoning ordinance cannot limit a nonconforming use to the precise extent, quantity and quality of the nonconforming use at the date of the ordinance. In Dunn's Appeal, 88 Pitts. L. J. 547, it was held that where land zoned in a residential district had been

subjected to a nonconforming use in the operation thereon of a cleaning and dyeing business previously to the ordinance, an extension of such business use by the erection of a building to be used as a dye house does not violate the zoning ordinance. This is so notwithstanding the fact that the building is to be erected on residentially zoned land recently acquired and which was not a part of the original premises.

Likewise in Walsh's Appeal, 89 Pitts. L. J. 383, the principle is laid down that where, prior to enactment of the zoning ordinance, land zoned as residential had been used for the operation thereon of a dry cleaning plant, an extension of such use by the erection of an additional story over an existing two-story building does not constitute a violation of the ordinance, and in Petition of Wick, 78 Pitts. L. J. 241, it was likewise held that where a lumber yard was established for a long period prior to passage of the ordinance, the owner may make changes and additions to plant necessary for the business, notwithstanding an ordinance which prohibits use of the land for commercial purposes. In such case, to refuse a permit to construct new buildings necessary for the trade would deprive the owners of their property without due process of law.

Defendant further contends that the operation of this business in this residential neighborhood is a nuisance per se and cites various cases which have held that a business such as this located in a residential neighborhood is such a nuisance. However, no evidence was offered by defendant that the operation of this business would be a nuisance or would in any way interfere with the enjoyment of property of adjoining owners or the comfort of the nearby residents in that neighborhood. If a nuisance is in fact created by the enlargement or extension of plaintiff's build-

ing and the manner in which the business is conducted in the future, the court of equity is open to afford relief.

We have not been able to find any decision which would justify us in holding that the proposed construction by plaintiff of an addition to his present building is an extension or enlargement of the nonconforming use so as to bring it within the prohibition of the Ordinances of 1937 or 1947.

Therefore judgment must be entered for plaintiff.

### Decree

And now, July 29, 1949, judgment is hereby entered for plaintiff and the Council of the Borough of St. Marys is hereby ordered to issue a permit to plaintiff for the construction of the addition to the present building as provided for in the plans and specifications presented to council and offered in evidence.

And now, July 29, 1949, defendant excepts to the foregoing decree and the exception is granted.